## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEW HAVEN FIREFIGHTERS | : | |
| LOCAL 825, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.  3:04cv1169 (MRK) |
| | : | |
| CITY OF NEW HAVEN, CIVIL | : | |
| SERVICE COMMISSION, JOHN | : | |
| DESTEFANO, JR. and TINA | : | |
| BURGETT, | : | |
| | : | |
| Defendants. | : | |

## <u>RULING AND ORDER</u>

This case arises out of two civil service exams issued in November and December of 2003 to determine New Haven firefighters' eligibility for promotion to Captain and Lieutenant.  Plaintiff New Haven Firefighters Local 825 ("the Union") sues the City of New Haven, the New Haven Civil Service Commission, Mayor John Destefano, Jr., and Tina Burgett, seeking to compel them to certify the results of the exams.  Before the Court is Defendants' Motion for Summary Judgment [doc. #52-1].  Because the Court concludes that the Union lacks standing to seek the relief requested, Defendants' motion is GRANTED.

## I

The facts relevant to the motion to dismiss are uncontested.  In November and December of 2003, the New Haven Civil Service Commission administered promotional examinations to determine eligibility for promotion to the positions of Captain and Lieutenant.  Plaintiff's Local Rule 56(a)2 Statement [doc. #62] ¶¶ 5, 14.  Section 160 of the New Haven Charter governs New Haven's

merit selection process and provides that only those applicants with the three highest scores on a promotional examination may be promoted – the so-called "Rule of Three." *Id.* ¶ 28. Section 160 also provides that only applicants with a score above 70% may pass. *Id.* Based on the Rule of Three, the nine top-scoring applicants for Captain would have been eligible for promotion, two of whom were Hispanic and none of whom was black; the ten top-scoring applicants for Lieutenant would have been eligible, none of whom was black or Hispanic.[1]  *Id.* ¶¶ 32-34.

After reviewing preliminary scoring data, the Civil Service Commission became concerned that the test results showed that the test would produce an adverse impact on minority applicants. *Id.* ¶¶ 25, 77.  The Commission held five public hearings from January to March 2004 to discuss whether to certify the results of the tests.  *Id.* ¶ 30.  Without certification, the results would not become official, and promotions could not be made.  Among those speaking at the hearing were the Union's president and firefighters who demanded that the results be certified.  *See* Defs.' Mot. for Summ. J. [doc. #52] Ex. F at 9-16; 17-24.  The Civil Service Board never certified an eligibility list from either examination, and no one was promoted based on the examinations.  Pl.'s Local Rule 56(a)2 Statement [doc. #62] ¶ 29.

On June 14, 2004, the Union began this action in Superior Court, and it was removed to this Court on July 15.  Notice of Removal [doc. #1].  The Union maintains that Defendants' decision not to certify the results of the promotional exams violates Title VII of the Civil Rights Act of 1964 and

---

[1]  In an affidavit submitted to the Court after the parties had submitted their Rule 56(a) statements, the Union stated that due to retirements, two Hispanic applicants would be promoted to the position of Captain and three black applicants would be promoted to the position of Lieutenant if the exams were now certified.  *See* Affidavit of Patrick Egan, President, New Haven Firefighters, Local 825 [doc. #67].  Based on the Rule of Three, Defendants deny that this statement is accurate. *See* Defendants' Supplemental Brief [doc. #66] at 2-3.  For the purposes of this Ruling and Order, the Court need not resolve this dispute.

the Due Process and Equal Protection Clauses of the Fourteenth Amendment.   Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [doc. #57] at 5-11.  The Union ask this Court to order Defendants to certify the results of the promotional exams.  *Id.* at 11. Also pending before the Court is another lawsuit filed by twenty aggrieved firefighters who sue some of the same Defendants, including the City of New Haven, for their refusal to certify the results of the same exams.  *See Ricci et al. v. DeStefano et al.*, 04-cv-1109 (filed July 8, 2004).   The firefighters seek compensatory and punitive damages, as well as declaratory and injunctive relief against the allegedly unconstitutional decision not to certify the exam results.  *Ricci et al. v. DeStefano et al.*, 04-cv-1109, Amended Complaint [doc. #29] at 21.

## II

Defendants have moved to dismiss, arguing that the Union lacks standing to pursue the claims it asserts on behalf of its members.  *See* Defendants' Memorandum in Support of Motion for Summary Judgment [doc. #52-2] at 5-10.  Whether an association has standing to sue on behalf of its members is governed by the three-part test articulated in *Bano v. Union Carbide Corp.*, 361 F.3d 696 (2d Cir. 2004).  Under *Bano*, an association has standing if: "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  *Id.* at 713-14 (quoting *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977)).

Defendants do not deny that Plaintiffs satisfy the first requirement, but they maintain that the Union cannot meet the second requirement because only a fraction of its members passed the promotional exams.  "[O]nly those members who scored within the top ten on the Lieutenant's exam

or scored within the top nine on the Captain's exam have an interest in the outcome of this action," and therefore the suit cannot be said to be relevant to the Union's purpose.  Defs.' Mem. in Support of Mot. for Summ. J. [doc. #52-2] at 6.   However, "[t]he fact that not all members of [an organization], which includes persons who suffered no injury . . ., would have standing to sue in their own right, does not defeat standing of the organization."  *In re Agent Orange Product Liability Litigation*, 373 F. Supp. 2d 7, 50 (E.D.N.Y. 2005).  Not every single member of the Union need be aggrieved before it has standing to seek relief on its members' behalf.  Thus, the Union satisfies the second requirement under *Bano*.

However, the Union cannot demonstrate that it satisfies the third requirement – that the individual participation of its members is unnecessary.  "In order to establish that the participation of individual members is not required, the organization must show that there is no conflict of interest or diversity of views that would prevent the organization from effectively representing its membership."  *N.A.A.C.P. v. Acusport Corp.*, 210 F.R.D. 446, 458 (E.D.N.Y. 2002).  To assess "the severity of the internal dissent," courts generally look to two factors: "First, whether the decision to bring suit was made in accordance with the association's normal procedures, and second, the extent to which the suit brings members' interests into actual or potential conflict."  *Nat'l Ass'n of College Bookstores, Inc. v. Cambridge University Press*, 990 F. Supp. 245, 251 (S.D.N.Y. 1997).  While there is no evidence in the record regarding the Union's decision whether to sue, it is clear from the face of the Union's complaint that there is a deep and divisive conflict between the interests of its members.[2]  While those members whose exam results make them eligible for promotion presumably

---

[2] According to the Union's counsel, all New Haven Firefighters are union members.  *See* Minute Entry for proceedings held before Judge Mark R. Kravitz [doc. #64].

4

support the Union's decision to seek certification of the results, those members who failed the exam or whose scores do not qualify them for promotion would undoubtedly support the decision not to certify the exam results and to seek an alternative means of determining promotion eligibility. A potential conflict also exists between minority applicants – against whom there was a fear of adverse impact that prompted Defendants not to certify the results – and non-minority applicants who claim to have been discriminated against. *See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. [doc. #57] at 8 ("Here the defendants' decision to refuse certification unlawfully restricted the promotional opportunities of nonminority candidates . . . . It trammeled the interest of nonminorities . . . .").

These conflicts are more than merely speculative. As noted above, several firefighters have filed suit against the City of New Haven for refusing to certify the exam results. And the President of the Firebirds Society of Bridgeport, an association of black firefighters, stated at a Civil Service Commission hearing that if the Commission chose to certify the results, the Firebird Society would have "no problem going to court to challenge this test and this process. No problem whatsoever." Defs.' Mot. for Summ. J. [doc. #52] Ex. F at 43. Indeed, counsel for the Union acknowledged at argument that if the exam results were certified, the City would likely face a lawsuit from those who had failed the exam and believe the exam results to be improper. Thus, it appears to this Court that the interests of a significant subset of the Union's members are diametrically opposed to the interests of another significant subset – precisely the sort of conflict that makes individual participation by aggrieved members necessary. *See Juvenile Matters Trial Lawyers Ass'n v. JudicialJuvenile Matters Trial Lawyers Ass'n v. Judicial Dept.*, 363 F. Supp. 2d 239, 248 (D. Conn. 2005) (finding that the third prong of *Bano* was not met, in part, because the arguments of the association claiming standing "likely would conflict with the interests of at least some of its members, who would also wish to

address the issue themselves").

Moreover, the fact that another suit involving precisely the same issue is currently pending before the Court reinforces the Court's conclusion that the Union is not the most appropriate party to pursue these claims.  While the Union has only sought an order forcing certification of the exam results, the individual firefighters in the separate suit have sought both damages and declaratory relief and injunctive relief.  *See Ricci et al. v. DeStefano et al.*, Amended Complaint [doc. #29] at 21.  Plaintiffs in *Ricci* thus request relief that encompasses, but is also broader than, the relief that the Union here requests.  Also, from the complaint in *Ricci*, it appears that the *Ricci* plaintiffs' challenge to the certification decision is at least as broad as the Union's in this case.  Indeed, at argument on the summary judgment motion,  the Union's counsel could provide the Court with no reason that *Ricci*, which has progressed to a nearly identical stage of litigation, would not be a better vehicle for resolution of these issues.  *See* Minute Entry for proceedings held before Judge Mark R. Kravitz [doc. #64].  Therefore, the Union cannot "show that [its] prosecution of the suit is necessary to insure protection of the rights asserted, as there is no indication that persons who in fact have been [injured] are disabled from asserting their own right in a proper case."  *Warth v. Seldin*, 422 U.S. 490, 510 (1975).  Prudential reasons thus counsel that the Court should address the important issues raised by this case in the context of claims of firefighters who allege they were injured by Defendants' conduct, rather than in the context of a  representative action brought by an entity that would appear to have a substantial conflict of interest.

### III

For the foregoing reasons, Defendants' Motion for Summary Judgment [doc. #52-1] is GRANTED.  **The Clerk is directed to close the file.**

IT IS SO ORDERED,

/s/ _____Mark R. Kravitz_____
United States District Judge

Dated at New Haven, Connecticut: **December 21, 2005**.